## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                          :

Natasha Sanders, individually and on behalf
of all others similarly situated,

                  Plaintiff,

        v.

Popeyes Louisiana Kitchen, Inc.,

              Defendant.

------------------------------------------------------- x

CASE NO. 1:22-cv-04477

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff Natasha Sanders ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Popeyes Louisiana Kitchen, Inc. ("Defendant") based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

### SUMMARY OF THE ACTION

      1.     This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of its Popeyes Chicken Tenders (the "Products")[1]

      2.     Specifically, Defendant falsely and deceptively advertises the Products as chicken "tenders," leading reasonable consumers to believe that the Products are made from chicken tenderloins.

      3.     Traditionally, chicken tenders are made from chicken tenderloins. Chicken tenderloins are the small strips of meat that are loosely attached to the underside of each breast,

---

[1] The "Products" are further defined and depicted in Paragraph 13-14.

1

along the breastbone. As a result, chicken tenderloins are more tender than regular chicken breast, and hence, the name chicken **_tender_**. Chicken tenderloins are also juicier, making them more desirable for consumption. They are significantly smaller than the remainder of the chicken breast, also making them more expensive than the rest of the chicken breast. For these reasons, the perception that the Products are actual chicken tenders made from chicken tenderloins is material to consumers.

4.     However, unbeknownst to consumers, the Products are not made from tenderloins, but the remainder of the chicken breast.

5.     As a result, the Products are not chicken tenders and are therefore falsely and deceptively advertised.

6.     Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on Defendant's representation that the chicken meat in the Products is comprised entirely of chicken tenderloin. Had Plaintiff and Class members been aware that the chicken meat in the Products was not comprised of solely chicken tenderloin, Plaintiff and Class members would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

<u>**PARTIES**</u>

**I.    Plaintiff**

7.     Plaintiff Natasha Sanders is a citizen of New York and currently resides in Flushing, New York. In or around early July 2022, as well as on previous occassions, Plaintiff purchased the Products from a Popeyes in Flushing, New York. In purchasing the Products, Plaintiff saw that the Product was advertised as a chicken "tender." Based on this

2

representation, she reasonably believed the Product was made from chicken tenderloin. Had she known that the Product was not made from chicken tenderloin, she would not have purchased the Product or would have paid substantially less for it.

## II.     Defendant

8.      Defendant Popeyes Louisiana Kitchen, Inc. is a Minnesota corporation and maintains its headquarters in Miami, Florida. Defendant is responsible for the formulation, ingredients, manufacturing, naming, marketing, and sale of the Products in the United States, including in this District.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home states; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

10.     This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Products into the stream of commerce within New York.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased the Product in this District.

## FACTUAL BACKGROUND

12.     Defendant is responsible for operating Popeyes, an American chain of fried chicken fast food restaurants with over 3,000 locations in the U.S.

13.     Among the products on its menu, Popeyes offers chicken "tenders." This action challenges all Popeyes products marketed, advertised, and sold as chicken "tenders" (the "Products"), including but not limited to:

a.  3 Piece Tenders

b.  5 Piece Tenders

c.  3 Piece Tender Combo

d.  5 Piece Tender Combo

e.  8 Piece Tenders Family Meal

f.  10 Piece Tenders Box

g.  10 Piece Tenders Bundle

h.  12 Piece Tenders Family Meal

i.  16 Piece Tenders Family Meal

14.     Each of the Products is falsely and deceptively advertised. Each Product is advertised as being chicken "tenders," leading reasonable consumers to believe that the Products are made from actual chicken tenderloins. *See, e.g., below.*[2]

---

[2] https://www.popeyes.com/menu/picker-xdgrygmaqSf78Pjdh6UrTF;



## 3Pc Tenders Medium Combo - ⚠️ Mild

### 1,194 Cal

Three of our handcrafted marinated chicken tenders



15.     In reality, however, the Products are not made from tenderloin, but with the less premium, remaining portion of the chicken breast, which is a different cut of the chicken. As such, Defendant has engaged in false and deceptive advertising.

16.     The perception that the Products are actual chicken tenders made of entirely chicken tenderloins (and no other cut of chicken) is material to consumers. Chicken tenderloins are the small strips of meat that are loosely attached to the **underside** of each breast, along the breastbone.  As a result, chicken tenderloins are more tender than chicken breast, and hence, the name chicken **tender.** Chicken tenderloins are also more moist than regular chicken breast, making them more desirable for consumption.

17.     In addition, tenderloins are significantly smaller than the remainder of the chicken breast, and require more time and care when deboning the chicken breast.[3] The foregoing factors makes tenderloins a more expensive, premium, and desired cut of chicken, as compared to the remaining portion of the chicken breast. In fact, chicken tenderloin can often be double the price.[4]

18.     Consumers do not know and have no reason to know that the Products are not made from chicken tenderloin, especially given that Defendant does not disclose this fact at the point of sale, such as on its in-store and drive-thru menu boards. Moreover, the expectation that the Products are made from chicken tenderloin is particularly reasonable given that other fast food restaurant chains, and even frozen food products, actually use chicken tenderloins, without using any other part of the chicken breast, in products marketed as chicken tenders.

19.     For example, the fast-food chain Culvers advertises its chicken tender products as "Chicken Tenders," and actually uses "Chicken Tenderloin" in the product:[5]



ORIGINAL CHICKEN TENDERS

A favorite among young and old alike, our Chicken Tenders get their name from the actual cut of tender, whole white meat chicken we so proudly use. Cooked crispy golden to order with your choice of BBQ, honey mustard or ranch dipping sauces.

---

[3] https://foodiosity.com/chicken-tenders-vs-breast/ ("This makes the breast cheaper, at least compared to tenders. If you go and buy chicken tenders packaged separately, they can be double the price. This is because they require the butcher an extra step, and more care when deboning the chicken breast. Watch out for fake tenders though! You'll sometimes see regular chicken breast cut into small strips, and sold as tenders. Those are not real tenders.")

[4] *Id.* ("Chicken breast is always cheaper").

[5] https://www.culvers.com/menu-and-nutrition/chicken/menu-item-details/Original%20Chicken%20Tenders,%202%20Piece

7

20.    The same is true for the world-famous fast food chicken restaurant chain, Kentucky Fried Chicken ("KFC"). KFC offers chicken "tenders" that are actually made from chicken tenderloins:

| Original Recipe® Tender | Chicken tenderloin. Breaded in: wheat flour, salt, monosodium glutamate, spices, dehydrated garlic, modified milk ingredients, dried egg white (egg white, baker's yeast, citric acid). Cooked in: canola oil (dimethylpolysiloxane (antifoaming agent), TBHQ). Contains wheat, milk and egg. |
|---|---|

21.    Similarly, Tyson sells "Southern Style Breast Tenderloins," which are made from "Chicken breast tenderloins":



22.     As the entity ultimately responsible for the manufacturing and advertising of the Products, Defendant is responsible for the accuracy of the information conveyed about the Products, including their names and advertising.

23.     Defendant knew or should have known that the Products' name and advertising are deceptive, and that reasonable consumers would believe the Products are made from chicken tenderloin, and not the remaining portion of the chicken breast.

24.     Through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed of the truth about the Products. Had Plaintiff been aware that the Products were made from the remaining portion of the chicken breast, and not chicken tenderloin, she would have purchased a different product or paid significantly less for the Products.

25.     By the use of misleading representations, Defendant created increased market demand for the Products and increased its market share relative to what its demand and share would have been had it marketed the Products truthfully.

26.     Plaintiff and members of the Class were exposed to and justifiably relied upon the same material misrepresentations throughout the class period: (1) the naming and advertising of each of the Products as chicken "tenders"; and (2) each of the Products are made from the remaining portion of the chicken breast, and do not contain chicken tenderloins.

## CLASS DEFINITION AND ALLEGATIONS

27.     Plaintiff brings this matter on behalf of herself and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiff seeks to represent the following class:

> All residents of the United States who purchased any of the Products for personal, family, or household consumption and not for resale within the applicable statute of limitation ("Nationwide Class").

28.    Additionally, as further described herein, Plaintiff brings claims based upon state consumer protection laws on behalf of the following state Class:

> All residents of New York who purchased any of the Products for personal, family, or household consumption and not for resale within the applicable statute of limitation period ("New York Class").

29.    The Nationwide Class and the New York Class are referred to collectively as the "Class" or "Classes."

30.    Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

31.    The following people and entities are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

32.    This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

33. **Numerosity:** Members of each Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there likely are hundreds of thousands of Class members.

34. **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

 a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

 b. whether reasonable consumers would rely upon Defendant's representations about the Products and reasonably believe the chicken meat in the Products is comprised entirely of chicken tenderloins;

 c. whether Defendant knew or should have known its representations were false or misleading;

 d. whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

 e. whether certification of each Class is appropriate under Rule 23;

 f. whether Plaintiff and the members of each Class are entitled to declaratory, equitable and/or other relief, and the scope of such relief; and

 g. the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

35. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Classes relied on the representations made by the Defendant about the Products prior to

purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

36.    **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Classes she seeks to represent; her claims are common to all members of the Classes and she has a strong interest in vindicating her and all other Class members' rights. Plaintiff has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action through judgment and appeal, if necessary.

37.    **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

38.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

**<u>CLAIMS FOR RELIEF</u>**

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
*(On Behalf of Plaintiff and New York Class)*

39.     Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

40.     New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

41.     The conduct of Defendant alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Class Members seek damages against Defendant.

42.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

43.     Defendant's improper consumer-oriented conduct—which includes naming and otherwise advertising the Products as "tenders," and thus being made from tenderloins — is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class Members to purchase and pay a premium for Defendant's Products and to consume the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

44.     Plaintiff and the New York Class Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations—not made from chicken tenderloins. Accordingly, Plaintiff and the New York Class Members received less than what they bargained and/or paid for.

45.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Class Members have been damaged thereby.

46.     As a result of Defendant's unlawful deceptive acts and practices, Plaintiff and the New York Class Members are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**
*(On Behalf of Plaintiff and the New York Class)*

47.     Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

48.     New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

49.     GBL § 350-a(1) provides, in part, as follows:

The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

14

50.     Defendant's naming and other marketing of the Products are materially misleading representations inasmuch as they misrepresent that the Products are made from chicken tenderloins.

51.     Plaintiff and the New York Class Members have been injured inasmuch as they relied upon the name of the Products and paid a premium for the Products which —contrary to Defendant's representations— are not made from tenderloins. Accordingly, Plaintiff and the New York Class Members received less than what they bargained and/or paid for.

52.     Defendant's naming and advertising of the Products induced Plaintiff and the New York Class Members to buy Defendant's Products. Thus, Defendant made material misrepresentations about the Products.

53.     Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

54.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

55.     As a result of Defendant's unlawful deceptive acts and practices, Plaintiff and New York Class Members are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### IN THE ALTERNATIVE, UNJUST ENRICHMENT
*(On behalf of Plaintiff and the Nationwide Class, or in the alternative, the New York Class)*

56.     Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

57.     To the extent the Court finds that Plaintiff and the members of the Classes did not form a contract with Defendant at the time they purchased the Products, Plaintiff brings this claim for unjust enrichment in the alternative, individually and on behalf of the Nationwide Class, or in the alternative, the New York Class.

58.     Plaintiff and Nationwide Class members purchased Defendant's Products and paid a premium for the Products. Defendant misrepresented that the Products were made from chicken tenderloin, which commanded a price premium.

59.     Defendant had knowledge of such benefit and obtained the benefit by its misrepresentations because the misrepresentations induced reasonable consumers to purchase the Products, which they would not otherwise have purchased or purchased at the advertised price.

60.     Defendant appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiff and Nationwide Class members. Defendant currently retains these benefits.

61.     Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefits were obtained by Defendant's misconduct detailed at length in this Complaint.

62.     Equity cannot in good conscience permit Defendant to be economically enriched for such action at the expense of Plaintiff and Nationwide Class members, and therefore restitution and/or disgorgement of such economic enrichment is required.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Classes, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

a.   Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.   A declaration or declaratory judgment that Defendant's conduct has violated and continues to violate the statutes and laws cited herein;

c.   An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and members of the Classes to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

d.   An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

e.   Distribution of any monies recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendant from retaining the benefit of its wrongful conduct;

f.   an award of all recoverable costs and expenses, including reasonable fees for Plaintiff's attorneys; and

g.     an award of pre- and post-judgment interest to Plaintiff and members each

of the Classes if applicable; and, ordering further relief as this Court

deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff and members of the Classes demand a jury trial on all issues so triable.

DATED: July 29, 2022                    **CUSTODIO & DUBEY, LLP**

By: ___/s/ Robert Abiri_____

Robert Abiri (SBN 238681)
*E-mail: abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

*Attorney for Plaintiff and the*
*Putative Classes*