

faegredrinker.com

**Jeffrey S. Jacobson**
Partner
jeffrey.jacobson@faegredrinker.com
212-248-3191 direct

Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036
+1 212 248 3140 main
+1 212 248 3141 fax

August 15, 2022

**BY ECF**

Hon. Kiyo A. Matsumoto, U.S.D.J.
United States District Court
for the Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re: **Sanders v. Popeyes Louisiana Kitchen, Inc., No. 1:22-cv-4477-KAM-PK (E.D.N.Y.)**

Dear Judge Matsumoto:

We represent defendant Popeyes Louisiana Kitchen ("Popeyes") in the above-referenced matter. We write pursuant to Your Honor's Chambers Practice III.B. to request a pre-motion conference at which Popeyes will seek leave to file a motion to dismiss this case in its entirety for failure to state a claim upon which relief may be granted.

At issue in this case is whether selling a "Chicken Tender" that is made from white chicken breast meat, not entirely from the meat of a chicken's tenderloin (which is a small muscle attached to the underside of the chicken's breast), constitutes a deceptive consumer practice under New York General Business Law Sections 349 and 350.  Ms. Sanders does not contend that Popeyes ever advertised its Chicken Tenders as being made exclusively from chicken tenderloins, and it did not do so.  The term "Chicken Tender" commonly is used to describe a breaded, fried strip of white chicken breast meat, which is exactly what Popeyes sells to its guests.  *See* Compl. ¶ 15; https://www.yourdictionary.com/chicken-tender (last visited August 5, 2022) (first definition stated as being "a deep-fried strip of chicken without bones or skin"); https://www.merriam-webster.com/dictionary/tender (last visited August 5, 2022) (first noun definition stated as "an often breaded strip of usually breast meat," *i.e.*, "chicken tenders").  Ms. Sanders' allegation in this case, that one cannot sell a "Chicken Tender" unless it is "made from the tenderloin," fails.

The Court is familiar with New York's "reasonable consumer" test, which governs claims like those alleged by Ms. Sanders.  Whether the Court should allow Ms. Sanders to move forward with her suit does not depend on what *she* believes "Chicken Tender" means.  The standard for whether an act or practice is misleading is an objective one, requiring a showing that a *reasonable consumer* would have been misled by the defendant's conduct."  *Rivas v. Hershey Co.*, No. 19-CV-3379(KAM)(SJB), 2020 WL 4287272, at *3 (E.D.N.Y. July 27, 2020) (citations omitted, emphasis added).  This means a plaintiff like Ms. Sanders "must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers'"; she instead must "plausibly allege that a significant part of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2021), *quoting Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

Hon. Kiyo A. Matsumoto                           -2-                           August 15, 2022

Popeyes' motion to dismiss will show that Ms. Sanders' claims do not satisfy the reasonable consumer test, just as this Court held the plaintiff in *Rivas* did not. The *Rivas* plaintiff claimed that because Hershey sold both a Kit Kat "milk chocolate" bar and a "Kit Kat White" bar, reasonable consumers expected the "White" bar to be made from white chocolate, even though "[c]rucially, there is no statement anywhere on Kit Kat White's packaging, or in any advertisement cited by Plaintiff, that describes the product as containing white chocolate." *Rivas*, 2020 WL 4287272, at *1, *5. Because the plaintiff failed to demonstrate "that the presence of the word 'white' on the package of Kit Kat White bars gives rise to a plausible claim that consumers would be misled into believing that chocolate was an ingredient," the Court held that claim failed. *Id.* at *5-*6. The same is true in Ms. Sanders' case because Popeye's never described its Chicken Tenders as being made from chicken tenderloins.

Ms. Sanders' Complaint cites no regulation or governmental guidance defining a poultry "tender," and Popeyes is aware of none. Ms. Sanders simply alleges in bare terms that "[t]raditionally, chicken tenders are made from chicken tenderloins." Compl. ¶ 3. Popeyes does not dispute that some companies may bread and fry tenderloins, but the products Ms. Sanders' Complaint references explicitly *say* they use tenderloins as a means of distinguishing themselves from "tenders" that do not. Ms. Sanders notes in her Complaint that the website of another quick-service restaurant chain, Culver's, explicitly advertises its "Chicken Tenders" as being made from chicken tenderloins—and being more desirable than competitors' "tenders" for that reason. *See id.* ¶¶ 19 & n.5. In a similar vein, Ms. Sanders' complaint references a frozen chicken product that is explicitly labeled "Southern Style Breast Tenderloins." *Id.* ¶ 21. That the marketing for both these products uses the word "tenderloin," while Popeyes' does not, demonstrates that the word "tender" does not automatically connote use of the tenderloin.

Although Ms. Sanders undoubtedly will cite cases in which courts have denied motions to dismiss in "reasonable consumer" cases, none are likely to involve both common usage and the dictionary opposing the plaintiff's construction of a term, as we see here, and therefore will not be analogous. In *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp.3d 83 (S.D.N.Y. 2021)—a case that distinguished *Rivas*—the plaintiff complained that products marketed as margarita and sangria cocktails, with images of margarita and wine glasses, were malt beverages that contained no tequila or wine, respectively. Judge Karas denied the defendant's motion to dismiss because both common usage and the dictionary supported the plaintiffs' interpretation of the cocktails' names. Ms. Sanders cannot say the same with respect to her personal definition of "tender."

Popeyes submits that the term "Chicken Tender" is not even *ambiguous* in the absence of an express statement that tenderloins were used, but even if the term were ambiguous, and the presence or absence of tenderloins was material to Ms. Sanders' purchase decision, she had the obligation to inquire further into whether Popeyes Chicken Tenders were made with tenderloins. That was the conclusion, for example, in *Bynum v. Family Dollar Stores, Inc.*, No. 1:20-cv-6878 (MKV), 2022 WL 837089 (S.D.N.Y. Mar. 21, 2022) (dismissing all claims), where a product marketed as "Smoked Almonds" contained nuts that were roasted, not smoked, and "natural smoke flavor" was listed as an ingredient. Because the word "smoked" could refer either to a process or a flavor, "a reasonable consumer would read the ingredients list," which dispelled the ambiguity by making clear the smoky taste came from flavoring. *Id.* at *4. The court in *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp.3d 89 (S.D.N.Y. 2021), held the same with respect to an "All Butter Loaf Cake" that contained soybean oil and artificial flavors—information consumers readily could have learned if what "All Butter" meant was material to them. *See also, e.g., Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp.3d 102, 117 (E.D.N.Y. 2021) (dismissing claims where a plaintiff's interpretation of a term was "debatable at best" and a bit of basic inquiry into the ingredients would have "set plaintiffs straight." Ms. Sanders does not allege that she made *any* inquiry into whether Popeyes Chicken Tenders used breast meat or tenderloins and certainly does not allege that Popeyes provided false information in response to an inquiry.

Hon. Kiyo A. Matsumoto -3- August 15, 2022

Ms. Sanders' alternative claim for "unjust enrichment" fails because, in New York, an unjust enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). This means that if the Court dismisses Ms. Sanders' claims under GBL Sections 349 and 350, it must dismiss her unjust enrichment claim, too.

Popeyes requests leave from the Court to make these arguments in more detail in a formal motion to dismiss Ms. Sanders' claims pursuant to Fed. R. Civ. P. 12(b)(6). If the Court wishes to have a pre-motion conference to discuss Popeyes proposed motion, Popeyes respectfully requests that the Court *not* schedule the conference during the period August 26-September 2 (inclusive) because the undersigned has a long-planned family vacation out of the country. With respect to a briefing schedule, Popeyes suggests that because the issues presented are straightforward, briefing should occur as provided in Local Rule 6.1(b). Popeyes can file its motion on September 9 (or fourteen days after the Court grants leave to file), with Ms. Sanders' opposition to Popeyes' motion due fourteen days after service and Popeyes' reply due seven days later.

Respectfully submitted,

Jeffrey S. Jacobson
Faegre Drinker Biddle & Reath LLP

*Attorneys for Defendant*
*Popeyes Louisiana Kitchen, Inc.*