Robert Abiri, Esq.
abiri@cd-lawyers.com



August 25, 2022

**VIA ECF**

Hon. Kiyo A. Matsumoto
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

      Re:   *Sanders v. Popeyes Louisiana Kitchen, Inc.*, **No. 1:22-cv-4477-KAM-PK (E.D.N.Y.)**

Dear Judge Matsumoto:

      We represent Plaintiff Natasha Sanders ("Plaintiff") and the putative Classes in the above-referenced matter, and write pursuant to Rule III.B.1 of Your Honor's Chamber Practices in response to Defendant Popeyes Louisiana Kitchen, Inc.'s ("Defendant") pre-motion letter seeking leave to file a motion to dismiss ("D. Letter"). As outlined below, any such forthcoming motion should be denied.

### N.Y. GBL §§ 349 and 350

      As Defendant notes, Plaintiff's N.Y. GBL §§ 349 and 350 claims are governed by the objective "reasonable consumer" standard, under which the finder of fact will ultimately need to determine whether a reasonable consumer is *likely to be deceived* by the challenged representation—chicken "tenders." However, Defendant overstates the pleading burden at this stage where dismissal of false advertising claims is only appropriate in the "rare situation," where "it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (adopting *Williams'* "rare situation" and "impossible" standards); *Atik v. Welch Foods, Inc.*, No. 15-CV-5405 (MKB) (VMS), 2016 WL 5678474, at *8 (E.D.N.Y. Sept. 30, 2016) (adopting the "rare situation" standard). This is because the question of whether a reasonable consumer is likely to be deceived is most often a question of fact for the jury, not appropriate for determination at this stage. *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV 5489 (KMK), 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) ("[A]mple case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact.") (citing cases). For the Court to grant a motion to dismiss, Defendant must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled[.]" *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (citation omitted).

---

Robert Abiri, Esq.<br>abiri@cd-lawyers.com

This is not one of the "rare situations" where it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived" into believing that chicken tenders contain chicken tenderloin. *Hesse*, 463 F. Supp. 3d at 467. The Products are called chicken "tenders," which is a common abbreviation for chicken "tenderloin." Indeed, chicken "tenders" sold at other fast-food restaurant chains use actual chicken tenderloins, without using any other part of the chicken breast. ECF No. 1, Compl. ¶¶ 18-20 (e.g., KFC chicken "Tenders" and Culver's "Chicken Tenders" both use chicken tenderloins). The association between "tender" and "tenderloin" is commonplace and it takes no stretch of the imagination to expect Defendant's chicken "tenders" to follow the market norm. Stated differently, Plaintiff's claims in no way "border on fantasy." *In re Frito-Lay*, 2013 WL 4647512, at *16.

Defendant does not dispute chicken "tenders" sold at other fast-food restaurants are made with actual tenderloins but instead contends—incorrectly that "the products Ms. Sanders' Complaint references *explicitly say* they use tenderloins as a means of distinguishing themselves from 'tenders' that do not." D. Letter at 2 (emphasis added). For example, KFC, perhaps the most popular fast-food chicken chain, offers chicken tenderloins advertised as just "tenders."[1]  There is ***no reference*** to chicken ***tenderloin***. In any event, whether certain restaurants disclose the use of actual chicken tenderloin misses the point. The fact the advertised name "tender" is associated with actual tenderloins supports the plausibility of Plaintiff's allegations. Whether consumers have another interpretation of the word "tender"—as Defendant contends—will ultimately be a question of fact to be fleshed out in discovery. *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 105 (S.D.N.Y. 2021) (rejecting a similar argument, holding "[a]lthough the clear disclosures on the comparator products might cast some doubt on Plaintiffs' theory, they have still advanced claims that are sufficiently credible to survive this Motion and proceed to discovery.").

Defendant also argues "[t]he term 'Chicken Tender' commonly is used to describe a breaded, fried strip of white chicken breast meat, which is exactly what Popeyes sells to its guests." D. Letter at 1. Defendant however provides no evidence ***any*** consumer understands the term "tender" this way, let alone shows the term is "commonly" used by consumers or the industry in that manner. Defendant's cherry-picked citations to dictionary definitions are not only incomplete (*see* cite to Merriam Webster, which fails to acknowledge it also defines "tender" as "the tenderloin of a chicken."[2]), but are also belied by many other definitions available online (*see e.g.*, Dictionary.com—definition of "tender" is "a strip of chicken meat loosely attached to the underside of each breast half, along the breastbone;"[3] Wikipedia—"chicken tender" includes "A flap of chicken meat found on, and easily detached from, the breast."[4]) Plaintiff also provides real-world examples where "tender" is used to describe actual chicken tenderloin.

Relatedly, Defendant contends that it "never described its Chicken Tenders as being made from chicken tenderloins." D. Letter at 2. But false advertising claims do not require an explicit promise or representation to be actionable. *See, e.g., Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16 Civ. 3645 (KPF), 2017 WL 3129799, at *14 (S.D.N.Y. July 21, 2017) (denying motion to dismiss GBL §§ 349 and

---

[1] E.g., https://www.kfc.com/menu/tenders/8-piece-tenders-a-la-carte; https://image.zmenu.com/menupic/48018/w_20200204165319526944.jpg. Plaintiff notes that the ingredient list image pasted in the Complaint at ¶ 20 is found on a separate webpage and is in no way linked to the menu pages. https://www.kfc.ca/Content/OnlineOrderingImages/StaticPage/IngredientListingApril2018.pdf
[2] https://www.merriam-webster.com/dictionary/tender
[3] https://www.dictionary.com/browse/tender
[4] https://en.wiktionary.org/wiki/chicken_tender

---

445 S. Figueroa Street ■ Suite 2520 ■ Los Angeles, California 90071<br>(213) 593-9095 ■ (213) 785-2899 – Facsimile

Robert Abiri, Esq.
abiri@cd-lawyers.com

350 claims when complaint "adequately alleges [] literally or impliedly false statements"). Instead, the representation need only be objectively ***misleading***. *Hesse*, 463 F. Supp. 3d at 466 ("while a representation need not be false to mislead a reasonable consumer, the representation must nevertheless be misleading or have the capacity, likelihood or tendency to deceive or confuse members of public.") (internal quotation marks omitted); *Kang v. P.F. Chang's China Bistro, Inc*., 844 F. App'x 969, 971 (9th Cir. 2021) ("Krab mix" on menu could deceive consumers into believing real crab is used). As discussed above, it is clearly plausible that a consumer could be misled by the word "tender" as an abbreviation word for "tenderloin."

Defendant's citation to *Rivas v. Hershey Co*., No. 19-CV-3379(KAM)(SJB), 2020 WL 4287272 (E.D.N.Y. July 27, 2020) is unavailing. There, this Court noted that the packaging of Kit Kat White expressly disclaimed that the chocolate bars were simply "Crisp Wafers [in] Crème." *Id.* at *5. "Crème" was defined as "cream or a preparation made with or resembling cream used in cooking," which was something distinct from white chocolate. *Id.* Moreover, this Court found the word "white" was a "modifying adjective" that simply described the white color of the wafers. *Id.* Here, nothing on the menu or advertising of the Products disclaims that they do not contain actual tenderloin or they are anything but tenderloin. Moreover, "tenders" is not a modifying adjective such as "white." Instead, "tenders" are nouns used as common shorthand for tenderloins, as confirmed by various dictionary definitions noted above.

Lastly, Defendant contends Plaintiff "had the obligation to inquire further into whether Popeyes Chicken Tenders were made with tenderloins." D. Letter at 2. This argument falls flat for two reasons. First, as this Court and the Second Circuit have held, consumers are not expected to cross-check prominent front label representations with back label ingredient lists or qualifying statements made elsewhere. *Mantikas v. Kellogg Co.,* 910 F.3d 633, 638 (2d Cir. 2018); *see also Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. 2021) (Matsumoto, J.). Second, even if consumers wanted to cross-check the "tenders" representations, Defendant does not provide consumers with any information in-store or online that discloses the fact that the Products are not made with tenderloin. *Izquierdo v. Panera Bread Co*., 450 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) ("This conclusion is supported by the fact that unlike the above cases—in which even the presence of accurate Nutrition Facts did not overcome misleading labeling—there are no allegations that a customer purchasing the Bagel in-store would have ready access to an ingredients list prior to making a purchase."). For these reasons, the cases relied on by Defendant—*Bynum, Boswell*, and *Warren*—are each distinguishable because in each of those cases, the product's ingredient list was readily available.

At the very least, to the extent the Court finds that Defendant has set forth a plausible interpretation of its own advertising, because Plaintiff has set forth an equally plausible (if not more plausible) interpretation of the advertising, the Court should defer to Plaintiff's reading at this stage. *See Cooper*, 553 F. Supp. 3d at 97 ("at the motion-to-dismiss stage, [w]here a representation is capable of two possible reasonable interpretations, the Court is not free to reject the misleading one ... simply because there is an alternative, non-misleading interpretation.") (internal quotation marks omitted). As such, Plaintiff's GBL claims will survive a motion to dismiss. Plaintiff does agree to withdraw her claim for unjust enrichment.

Sincerely,

Robert Abiri